## Burns *v.* Vesta Coal Company, Appellant.

223   473
f41SC⁴629

*Negligence—Master and servant—Mines and mining—Coal mining—Neglect to warn employee of danger.*

1. It is the duty of the master to warn his servants of new or increased dangers caused by a change in his machinery, appliances or place or methods of work, and he will be held liable for injuries resulting from his neglect of duty in this respect.

2. Where a man works in a coal mine for two days on a motor which carries him safely through the entries when seated upon the front end of the motor, and he is then transferred to a larger and higher motor, having no seat in front, and operated in another and unfamiliar part of the mine, and the workman is not warned that he could not safely ride on the top of the motor because of low places in the roof, and as a result he is thrown from the motor at a depression of the roof, he may recover from his employer damages for the personal injuries sustained.

3. If a particular practice of mining is a dangerous one, and an injury

results therefrom to an employee, the employer in a suit against him for damages by the employee, cannot show that the practice was customary in other mines. Customary negligence is no excuse in such a case.

Argued Oct. 15, 1908. Appeal, No. 54, Oct. T., 1908, by defendant, from judgment of C. P. Washington Co., Feb. T., 1907, No. 101, on verdict for plaintiff in case of William J. Burns v. The Vesta Coal Company. Before MITCHELL, C. J., FELL, BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before TAYLOR, J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

At the trial the court refused several offers of testimony to the effect that the ordinary method of constructing entries in coal mines was to make the height only sufficient to permit the passage of loaded cars of coal without striking the roof. [3, 4]

When Joseph Edwards was on the stand he was asked this question:

"Q. Mr. Edwards, considering that in this mine eight-ton motors were used for gathering coal, I ask you whether it was a safe construction of the entry to permit this roof at this point on ten butt C to remain at the height of four feet nine inches and five feet? A. Yes, sir."

Mr. Ewing: Object to the question: he can testify to what the facts are there.

The Court: It is a fact for the jury to say whether it was safe or not, they can say how long they used it that way, and this was the only time they had an accident that resulted from such circumstances as claimed here and anything relating to that. Let the jury draw the inference as to whether both parties performed their duty. Bill sealed for defendant. [5]

William Gillingham, defendant's witness, being on the stand, was asked this question:

"Q. What was the proper position for a snapper to be in that was riding on the front end of the motor going down through ten butt C, or a similar place, after a trip?"

Objected to.

The Court: We will sustain that objection; you can ask him how his men rode; that is a conclusion of the witness that the jury must arrive at from all the circumstances of the case. Bill sealed for defendant. [6]

The court charged in part as follows:

[He might be required to take notice of the fact, as an incident of his employment, that a mine varies in height at different places from one cause and another, but if there was a very low place, so low that it had scooped the coal off of cars at times, other things touched it that were on the motor beside the men, that there was such a place as that in the mine, then it is for you to say whether or not it was the duty of his employer or the employer of laborers to work in a place of that kind to give them special notice that there was such a place there if they required them to work in there, to go in there, when they had never been in there.] [7]

[Now was there anything, gentlemen of the jury, any particular place on this motor that this man, with his limited knowledge of motors and snappers' positions, would be required to take? Was there any seat provided for him? Had he been riding on any other car that there was a seat on and when he mounted this eight-ton motor on which there was no seat, would he as a reasonable and prudent and careful man sit in the position on that car where the seat was on the other where he could perform the duties of snapper properly? All those things have to be taken into consideration by you in determining whether or not there was any negligence here on the part of the plaintiff that would defeat his rights to recover if you find the defendant was negligent.] [8]

But while he was intent, as he claims, in watching the track ahead of him, assuming, as he had a right to assume if he had no notice to the contrary and had no knowledge of his own, that the roof was high enough for him in that position all the way through there, if he was sitting as he was, to prevent his head coming in contact with it, his head struck a low place in the roof and he was knocked off the motor and it ran over his leg.] [9]

Defendant presented these points:

8. Under all the evidence the verdict of the jury must be for the defendant. *Answer:* Refused. Now, we say, gentlemen of the jury, on that point, further, that it having been testified in this case, and I believe on the part of the defendant, that this low place in this mine was generally known. Now, "generally known," you would have a right to assume and the court assumes when a witness testifies that generally known to the employees who had been working in that mine and to the owners and operators, to mean both, because they had the means of knowing it; it was a stationary, fixed thing, it did not happen in a nighttime or by the fall of slate or anything of that kind, but it was a fault in the geological formation, I would understand,.or the roof by the absence of slate above the coal at that point, this sandstone, as they call it, coming down and at that low place either required them to shoot it out to get through or to dig out in the bottom sufficient to let them through to continue the driving of the entry under and at right angles to other entries. So, if the jury find from the testimony of that kind that the mine owners or operators knew or ought to have known under all the circumstances that are testified to in this case that this low roof existed in there and coal was being dragged off, then it makes no difference, the plaintiff does not have to invoke the aid of the "Employers' Personal Liability Act" which was passed last session of the legislature. An offer of testimony was made by the defendant during the trial of the case which, if we would affirm, or would have admitted might have resulted in taking the case away from you, because that is under the bituminous mining Act of May 15, 1893, P. L. 52, where the legislature of this state virtually took out of the control of the owner of a coal mine his management of the mine by saying, "You shall have a fire boss, you shall have a pit boss, you shall have a superintendent and shall have a mine foreman," etc. The state by act of assembly created all those positions, and all that the law required a mine owner or operator to do was to employ competent men who had certificates of their fitness for said position under the mine inspectors of the mining board, and if somebody was hurt through their negligence why the state, having assumed to run that man's business to this extent, relieved the

owner of the mine from the liability and you could only hold
him in case he employed incompetent officials or had knowl-
edge that one that he had employed was incompetent, became
incompetent and he had knowledge of it.   But we leave it to you,
gentlemen of the jury, to say whether or not such an obstruction
as this faulty formation was which projected down from the roof
of that mine and left a distance at this particular point, as the
plaintiff claims, the lowest point where he claims his head was
struck four feet eight inches,—seven inches, or whatever it was,
and as claimed by the defendant four feet nine inches, maybe
by another witness or two, five feet one inch, and it existed there
since this mine was opened or since the entry was driven through
that formation, then the operators and owners of that mine
would be charged with the general knowledge of employees and
officers of the mine that this alleged obstruction was there. [10]

6. If the jury believe from the evidence that the entry was
finished in the ordinary manner and that the plaintiff knew,
from his former experience as a miner and driver, that the entry
roof would be of varying height, they must find that the plain-
tiff assumed the risk as one ordinarily attendant upon the em-
ployment and the verdict must be in favor of the defendant.
*Answer:* That would be affirmed, if you find that it was such a
low place in that mine as was ordinary and common and that
so generally known as to bind this man, whether he had been
through it personally or not, but knew about the mine. [1]

7. The Act of assembly approved June 10, 1907, P. L. 523,
commonly known as the "Employers' Liability Act," has no
retroactive effect and has no application to this case.   *Answer:*
We may affirm this point; whether the plaintiff may or may not
recover in this case does not depend on the question of law raised
by the point.   Nor that said act may be so construed as to re-
lieve the defendant from liability in this case if the jury find
from all the evidence that the owners or operators of the mine
in which the plaintiff was injured personally knew or reasonably
from all the circumstances ought to have known that this low
place in the roof complained of was there, and that it was a
menace to the lives or limbs of its employees, lawfully on its
electric motors while traveling through said mine and through

said places while in the performance of their duties and in the exercise of ordinary care under the circumstances. [2]

Verdict and judgment for plaintiff for $7,500.    Defendant appealed.

*Errors assigned* were (1, 2, 7–10) above instructions, quoting them; (2–6) rulings on evidence, quoting the bill of exceptions.

· *Andrew M. Linn*, for appellant, cited: Cunningham v. Bridge Works, 197 Pa. 625; Leonard v. Herrmann, 195 Pa. 222; Titus v. R. R. Co., 136 Pa. 618; Boyd v. Harris, 176 Pa. 484; Northern Central Ry. Co. v. Husson, 101 Pa. 1.

*Frank Ewing*, with him *John H. Murdoch*, for appellee.

OPINION BY MR. JUSTICE POTTER, March 1, 1909

In this action the plaintiff sought to recover damages for personal injuries, resulting, as alleged, from the negligence of the defendant.    It appears from the evidence that in the operation of its coal mines by the defendant, the coal is loaded in cars which are assembled in trains in the mine by electric motors, and these trains are then hauled out by other larger and more powerful motors.    The gathering motors were equipped with a seat in the rear for the motorman, which seat was low enough to require a portion only of the body of the motorman to extend above the platform of the motor.    A similar seat on the front end was provided for the use of an assistant to the motorman, who was called the "snapper," and whose duty it was to throw switches, make couplings, and keep a general lookout ahead on the track, and in various ways assist the motorman.    The "snapper" usually rode on the front end of the motor.    When the plaintiff applied to the defendant company for employment he stated in answer to a question, that he had never worked with a motor, but he had been a mule driver in a coal mine and had discharged duties in gathering and handling cars, somewhat similar to those of a "snapper."    He was then given employment as a "snapper" and went to work on a five

and a half ton motor. After working two days he and the motorman with whom he was working were assigned to an eight-ton motor, constructed differently and with a higher platform or top, and without a seat for the "snapper" such as had been provided on the motor upon which he was first engaged. The evidence tends to show that no instructions were given to plaintiff as to where he should ride upon the larger motor, and that no warning was given him against the danger from low places in the roof of the mine, which would not permit of passage while sitting upon the top of the motor; nor does it appear that he had any knowledge of the existence of such low places, which were liable to catch and injure him. Prior to the accident the plaintiff sat upon the top of the front end of the motor, and while in this position, as it was moving to the place in the mine where work was to begin, and while he was attending to his duties, looking ahead for switches and obstructions on the track, a low place in the roof was encountered which would not permit of passage without crowding plaintiff from the motor, and in consequence he fell on the outside of the track, with one leg over the rail, and was run over and so injured that amputation of the leg became necessary.

Upon the trial, binding instructions in favor of the defendant were refused, and the trial judge submitted to the jury the questions of the negligence of the defendant and the contributory negligence of the plaintiff. The verdict was for the plaintiff, and from the judgment entered thereon, the defendant has appealed, and has filed ten assignments of error. The first, second and tenth relate to answers to points. In the first assignment it is alleged that the court erred in refusing to affirm without qualification defendant's sixth point, which was as follows: "If the jury believe from the evidence that the entry was finished in the ordinary manner, and that the plaintiff knew, from his former experience as a miner and driver, that the entry roof would be of varying height, they must find that the plaintiff assumed the risk as one ordinarily attendant upon the employment, and the verdict must be in favor of the defendant." The trial judge answered this by saying, "That would be affirmed, if you find that it was such a low place in that mine as was or-

dinary and common, and that so generally known as to bind this man, whether he had been through it personally or not, but knew about the mine."

The answer gave to the defendant the benefit of more than it was entitled to. For the negligence of which complaint is made, lay in the fact of placing the plaintiff upon a motor too large to permit him to ride upon it and pass through certain portions of the mine without danger of being crushed, or crowded off, and that without giving him warning of the danger. Certainly the defendant has no reason to complain of this instruction, and we therefore dismiss the first assignment of error.

Complaint is made in the second assignment that the trial judge did not affirm without further comment the seventh point, in which the court was requested to charge the jury that the Employers' Liability Act of June 10, 1907, P. L. 523, is not retroactive and had no application to this case. The point was properly affirmed, but the trial judge added a confused statement which could hardly have been intelligible to the jury. Its relevance is not apparent, but we do not see in the statement anything which would necessarily mislead the jury or warrant a reversal of the judgment.

The third and fourth assignments are to the refusal of defendant's offer of evidence to show that in mines where a fault in the roof like the one in question occurred, it was the ordinary method of constructing entries to make the height only sufficient to permit the passage of loaded cars of coal, without striking the roof and dislodging the coal from the cars. This evidence was properly refused, If the practice was a dangerous one, it mattered not that it was common. Customary negligence would be no excuse for the defendant. Besides, the negligence charged here was not the maintenance of the low roof alone, but the failure to warn plaintiff against the peril of attempting to pass under it while riding upon the large motor provided for use in the mine. These assignments are therefore dismissed.

In the fifth assignment counsel for appellant complains of the exclusion of a question, which the witness answered before the objection was made. The answer was not stricken out, so that defendant was not in any way harmed by the ruling, even

if it had been erroneous, which it was not. In the sixth assignment counsel for appellant complains of the overruling of a question as to the proper position for the "snapper" to occupy while riding upon the front end of the motor. The form of the question was objectionable, as it called merely for the opinion of the witness. He was allowed to state the facts as to the manner in which his men rode, and this was all that the defendant was entitled to. We see nothing objectionable in the portions of the charge assigned as error in the seventh, eighth and ninth specifications. The court referred to evidence tending to show that the roof was so low at one place as to scrape coal off the cars at times, and left it to the jury to say whether or not prudence required the employer to give notice of the existence of such a place, to an employee who had never been in that portion of the mine before. He further asks the jury to say whether, under the circumstances of the change from one motor to the other, it was reasonable and prudent for the plaintiff to sit where he did, on the higher motor. We think the evidence was sufficient to justify the remarks of the court as to all these various phases of the case. The comments in connection with the refusal of the eighth point, which requested binding instructions for the defendant, were by no means clear, but taken in connection with the general charge we do not think that the jury could have been misled by them.

It is evident that the change from the smaller motor, provided with a low seat, to the larger and higher motor, which was without any seat, increased the danger to the employee whose duty required him to ride upon the motor. The danger was intensified by the inexperience of the plaintiff, and his lack of acquaintance with the entries in the mine. It was a fair question for the jury to determine, whether under the circumstances prudence did not require the employer to warn the plaintiff to look out for the low places in the roof. This was particularly true because of the increased danger arising from the change from the smaller to the larger motor, the latter taking more space in the entry, and being without a seat for the "snapper." "It is the duty of the master to warn his servants of new or increased dangers caused by a change in his machinery, appliances or

place or methods of work, and he will be held liable for injuries resulting from his neglect of duty in this respect:" 26 Cyc. L. & Pr. 1169. The same principle is more fully stated in 4 Thompson on Negligence, sec. 4066: "If the master makes any change in his business or in the structure of his premises, which exposes the servant to increased danger, of the nature and extent of which the servant is not aware, the master is bound, in the exercise of the same duty, to instruct the servant as to the character of the new risks to be run, unless they are open and visible, or such as by the exercise of ordinary care the servant will see."

In the case at bar the plaintiff had been working in the defendant's mine but two days, and during that time he rode upon a motor which carried him safely through the entries, when seated upon the front end of the motor. He was then transferred to the larger motor without warning that he could not safely ride upon it through the entries. He testified that he had not before been through the entry where he was hurt, and that he had no knowledge of, nor any notice of, the low place in the roof, and no warning of danger. Upon the record as a whole, we are of opinion that the case was properly for the jury, and in the manner of its submission we see no substantial error which would justify a reversal of the judgment. It is therefore affirmed.