CASEY-HEDGES CO. v. OLIPHANT.

(Circuit Court of Appeals, Sixth Circuit.   January 4, 1916.)

No. 2657.

1. APPEAL AND ERROR ☞729—ASSIGNMENTS OF ERROR—SUFFICIENCY.
      Under rule 11 (224 Fed. vii, 137 C. C. A. vii), requiring assignments of error to set out separately and particularly each error asserted and intended to be urged, where a motion for a directed verdict was specific in its statement of the supporting reasons, and these were fully considered in the charge, resulting in clearly defining the issues upon which the case was submitted, an assignment that the court erred in overruling such motion sufficiently disclosed the nature of the error relied on, though the grounds of the motion were not restated in the assignment.
      [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2998, 3013; Dec. Dig. ☞729.]

2. TRIAL ☞168—MOTION FOR DIRECTED VERDICT—DENIAL.
      A motion to direct a verdict is simply a demurrer to the evidence, and where any one of the grounds stated or reasonably to be implied is good it is error to deny the motion.
      [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 376–380; Dec. Dig. ☞168.]

3. MASTER AND SERVANT ☞286—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.
      A foundry employé was injured by an explosion caused by molten iron coming in contact with the cold iron, or wet sand, or both, of a green sand core used in molding, as the melted iron was being poured into the mold.   He was called from another part of the foundry to assist in the pouring, and had nothing to do with preparing the mold.   For two years he had worked as a molder where dry sand cores were used, but it appeared that, while there was danger of an explosion in using either kind of core, the explosion where a dry core was used was gradual, while that incident to the use of a green core was sudden.   He had been assisting in the pouring for about 15 minutes each day for a period stated by himself as a few days and by his foreman as two weeks, and at other times worked on another "floor" of the foundry, separated by a wall from the one where the explosion occurred.   He testified that he had no knowledge of the danger attending the use of green cores.   Held, that fair-minded men might have drawn different conclusions as to his knowledge of the particular danger, and the question whether the employer was negligent in failing to warn him of the danger was a question for the jury.
      [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☞286.]

4. MASTER AND SERVANT ☞150—LIABILITY FOR INJURIES—DUTY TO WARN.
      Where a master has knowledge of a danger likely to be encountered,. and of the servant's lack of such knowledge and consequent inexperince, it is his duty to use reasonable care in warning him of the danger and in instructing him how best to perform the particular service;   and this

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rule is applicable where the danger to be encountered results from a change in service imposed upon an employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 297, 299-302, 305-307; Dec. Dig. ☞150.]

5. MASTER AND SERVANT ☞151—LIABILITY FOR INJURIES—DELEGATION OF DUTIES.

The duty resting upon a master to warn a servant of a danger, and to instruct him how best to perform the particular service, is a primary one, and nondelegable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 298; Dec. Dig. ☞151.]

In Error to the District Court of the United States for the Southern Division of the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action by J. R. Oliphant against the Casey-Hedges Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. B. Sizer, of Chattanooga, Tenn., for plaintiff in error.

W. B. Miller, of Chattanooga, Tenn., for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and McCALL, District Judge.

WARRINGTON, Circuit Judge. Oliphant recovered a verdict and judgment against the company for personal injuries suffered while in its employ. At the close of Oliphant's evidence, which was all that was offered, the company moved that a verdict be directed in its favor. The motion was overruled, exception reserved, and the only assignment presented here is that "the court erred in overruling the motion * * * to direct the jury to render a verdict for the defendant."

[1, 2] 1. Motion is made to dismiss the writ of error for the reason that the assignment is insufficient under rule 11 (224 Fed. vii, 137 C. C. A. vii). In the view we take of the case, the rights of Oliphant cannot be affected by either granting or denying his motion (Lenoir Car Works v. Trinkle, Adm'r, 228 Fed. 634, —— C. C. A. ——, decided December 17, 1915); still, as the motion questions our right to consider the case, it may not be inappropriate to say that the motion to direct was specific in statement of supporting reasons, and these were fully considered in the charge. This resulted in clearly defining the issues upon which the case was submitted to the jury. One of the issues in effect was whether there was evidence tending to show negligence on the part of the defendant which either caused or contributed to the plaintiff's injury. Where exception has been reserved, and error is assigned simply to the denial of such a motion, even where the motion fails to state any ground, it has been the practice here to indulge a presumption that an issue such as the one just stated was submitted to the jury. Louisville & N. R. Co. v. Womack, 173 Fed. 752, 759, 97 C. C. A. 559. And where grounds are stated in the motion, as here, it would place a strained construction upon rule 11, and could serve no useful purpose, to require the grounds to be re-stated in

the assignment. Chicago, M. & St. P. R. Co. v. Bennett, 181 Fed. 799, 800, 104 C.. C. A. 309 (C. C. A. 8th Cir.); Atchison, T. & S. F. R. Co. v. Meyers, 76 Fed. 443, 447, 22 C. C. A. 268 (C. C. A. 7th Cir.). See, also, Metropolitan Life Insurance Co. v. Hartman, 174 Fed. 801, 804, 98 C. ·C. A. 509 (C. C. A. 8th Cir.). A motion to direct a verdict is after all simply a demurrer to the evidence, and where even one of the grounds stated or reasonably to be implied is good it is error to deny the motion. It is therefore vain to say that the present assignment does not sufficiently disclose the nature of the error relied on here; and so the motion to dismiss the writ of error must be overruled.

[3] 2. Oliphant received his injuries from an explosion, which occurred in a flask within the company's foundry, while he was pouring molten iron into the mold for casting pipe. The explosion was caused through contact of the hot iron with the cold iron, or the wet sand, or both, of what is known as the green sand core within the flask. After stating that the flask consists of a "rectangular, box-like structure filled with damp sand," counsel for the company we think correctly describe the method of such molding:

"A form is first put into the flasks to make the impression of the exterior surface of the pipe; then the form is taken out and a core, consisting of a hollow metal pipe, also covered with damp sand, is put into the flask. The diameter of the core being less than that of the form with which the first impression was made, there is a hollow space left between the outside of the core and the sand in the flask; and into this space the melted iron is poured through the 'gates' or openings left in the sand for that purpose, and thus the pipe is formed around the core or arbor."

It will thus be seen that, while the molten iron comes into contact with the entire damp sand coating of the core, it cannot do so with any part of the interior metal pipe unless the coating is imperfect; and it is quite plain that neither the condition of the sand nor the extent of the coating is visible to a person engaged in pouring hot iron through one of the gates. Oliphant had nothing to do with preparing the green sand core or any part of the contents of the flask. It was necessary that four persons should unite in pouring melted iron from hand ladles through the gates; and after everything had been prepared for the operation Oliphant was called from another part of the foundry to assist in the pouring.

The evidence tends to show that the operation is dangerous, when the sand coating of the core is either too damp or the interior metal pipe is not fully and adequately covered; that for some two years previous to the injuries plaintiff was working as a molder where dry sand cores, though not where green sand cores, were used; and that there is a marked difference between the dangers attending these two kinds of molding. One way in which this difference is described is that the danger incident to green sand core molding is from "explosion," while that attending dry sand core molding is from a "blow"; the first being sudden, while the other is gradual. The dry sand core is composed of a mixture of sand and other materials, though rarely of iron within the mixture; and before the dry core is used it is placed in an oven and baked. When the molten iron is poured into the

gates gas forms and escapes in each process through vents, but the difference between the sudden and violent exit of the gas generated in the use of the wet core and its gradual exit in the use of the dry core is shown without material conflict in the evidence.

Plaintiff gained his experience in dry core work while in the employ of this company, and shortly before the accident the company placed him in charge of the dry core floor with an increase in compensation. However, he was always subject to the orders of the foreman of the foundry department; and it was this foreman who ordered him to assist in the pouring in question. There is conflict in the testimony as to the time plaintiff rendered such service, he testifying that it was from two to four days and the foreman that it was about two weeks; but it is not disputed that the time required for each day's pouring did not exceed fifteen minutes. The new service then may be said to have lasted only from one hour to three hours. The foundry comprises something like 22 "floors," as they are called; and the only floor on which the wet process was conducted was the place where plaintiff was injured. The distance between that floor and the floor occupied by plaintiff while working in the dry process is variously estimated to be from 50 feet to more than 50 steps, with a wall intervening and having an opening of about 20 feet. The plaintiff testifies, however, that he had no knowledge of the danger attending the wet process until after he was injured; and concededly he was at no time instructed or warned in respect of the danger.

The grounds stated in support of the motion to direct, in substance, were (1) that the danger of explosion was incident to the business; (2) that Oliphant was an experienced molder, and did not request or need instructions or warning with respect to pouring molten iron; and (3) that there was no evidence to warrant a finding that the company was guilty of negligence which either caused or contributed to the injury. These grounds in effect concede plaintiff's employment and injury, the dangerous character of the particular service, and the failure of the master to give instructions or warning to the plaintiff.

Judge Sanford felt constrained to submit the case to the jury upon the single question:

"Whether or not the defendant negligently failed to give the plaintiff any warning as to the danger of explosions of the molten metal in the work in which he was engaged when injured."

The charge was comprehensive as respects the admitted facts, the tendency of the conflicting features of the testimony, and the theories respectively upon which the plaintiff presented his case and the company urged its defense. This was also true of the burden of proof, and of the rules of law which the court deemed applicable to each phase of the case—as, for instance, the rules respecting the acts and omissions of fellow servants and the plaintiff's assumption of risk. No exception was taken to any part of the charge, and it is therefore to be accepted as containing correct instructions upon every question to which the evidence gave rise.

[4, 5] Was it error, then, to refer to the jury under proper instructions, instead of determining, as a matter of law, the question arising

upon defendant's omission to warn plaintiff of the danger incident to the new work he was required to perform? Since defendant was admittedly familiar with this danger, and also with the fact that plaintiff had never before taken part in that kind of work, its duty or not to warn him of the danger depended upon whether, in view of his previous experience, fair-minded men might honestly draw different conclusions as to his knowledge of the particular danger in question. We do not see how the trial judge could safely say they might not; indeed, the jury might think that plaintiff's experience in dry core molding was calculated to lull him into a sense of security in performing the new service. The failure, then, to warn presented a question for the jury. It appears in the opinion denying the motion for a new trial that the court relied in part upon two decisions of this court. Louisville Co. v. Miller, 104 Fed. 124, 43 C. C. A. 436; Felton · v. Girardy, 104 Fed. 127, 43 C. C. A. 439, cited approvingly in Railroad v. Jarrett, 111 Tenn. 565, 574, 82 S. W. 224. The principle of those decisions is that, where the master has knowledge of the danger likely to be encountered and of the servant's lack of such knowledge and consequent inexperience, it is the master's duty to use reasonable care in warning him of the danger and in instructing him how best to perform the particular service. This principle is applicable where the danger so to be encountered results, as here, from a change in service imposed upon an employé. Montana Coal & Coke Co. v. Kovec, 176 Fed. 211, 213, 214, 99 C. C. A. 565 (C. C. A. 9th Cir.); Valley Camp Coal Co. v. Kucewicz, 211 Fed. 953, 955, 128 C. C. A. 451 (C. C. A. 3d Cir.); Klauder-Weldon Dyeing Mach. Co. v. Gagnon, 183 Fed. 962, 965, 106 C. C. A. 302 (C. C. A. 2d Cir.); Cincinnati, N. O. & T. P. Ry. Co. v. Gray, 101 Fed. 623, 630, 41 C. C. A. 535, 50 L. R. A. 47 (C. C. A. 6th Cir.); McCalman v. Illinois Central R. Co., 215 Fed. 465, 469, 132 C. C. A. 15, and citations (C. C. A. 6th Cir.); Borkowski v. American Radiator Co., 165 Mich. 266, 267, 271, 272, 130 N. W. 640; Burns v. Vesta Coal Co., 223 Pa. St. 473, 481, 72 Atl. 800. The duty so resting upon the master is of a primary character, and is therefore nondelegable. McCalman v. Illinois Cent. R. Co., supra, 215 Fed. 470, 132 C. C. A. 15, and citations. In our judgment the cases relied on by counsel for the company are upon their facts fairly distinguishable from the instant case.

The judgment is affirmed, with costs.