## GRUSHLAW v. PHŒNIX KNITTING WORKS.

(Circuit Court of Appeals, Third Circuit. May 15, 1915.)

No. 1937.

1. INJUNCTION ⬉251—LIABILITY ON BOND—EVIDENCE OF DAMAGE.

Evidence considered, and *held* to establish the fact that the defendant, in a suit for making and selling an article infringing a patent did not abandon the manufacture prior to the issuance of a preliminary injunction in such suit, but merely suspended it to await the result of the hearing, that its subsequent discontinuance and the sale of the special machinery and material on hand were due to the injunction, and that on his successful defense to the suit and its dismissal he was entitled to recover damages on the injunction bond.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 582–585; Dec. Dig. ⬉251.]

2. EQUITY ⬅➡409—FINDINGS OF FACT BY MASTER—REVIEW.
    . The conclusions of a master on matters of fact have every reasonable
    presumption in their favor, and are not to be set aside or modified unless
    there clearly appears to have been error or mistake on his part.
        [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 904, 920–923;
    Dec. Dig. ⬅➡409.]

Appeal from the District Court of the United States for the Eastern
District of Pennsylvania; J. Whitaker Thompson, Judge.

Suit in equity by the Phœnix Knitting Works against Samuel Grush-
law, trading as the Pennsylvania Knitting Mills. From a decree deny-
ing him recovery of damages on injunction bond, defendant appeals.
Reversed.

Frank S. Busser, of Philadelphia, Pa., for appellant.

F. E. Dennett, of Milwaukee, Wis., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit
Judges.

WOOLLEY, Circuit Judge. This is an appeal from a decree of the
District Court reversing a master's finding of damages occasioned the
defendant by a preliminary injunction awarded in a suit for infringe-
ment of a patent, and raising the question whether the damages were
sustained before or after the issuance of the writ.

Grushlaw, the defendant, was a manufacturer of sweaters. In May,
1910, he added to his business a department for the manufacture of
neck scarfs or mufflers of the particular type of the patent in suit. He
rented a floor of a building, bought machinery, employed operators
especially skilled in the manufacture of such wear, and made over 700
dozen mufflers, for some of which he had received orders for delivery
in the fall of that year. On August 3, 1910, Phœnix Knitting Works,
the complainant, filed a bill against the defendant charging infringe-
ment of its design patent No. 39,347 for neck scarfs or mufflers. Upon
the date of the filing of the bill, a rule was entered against Grushlaw
to show cause why a preliminary injunction should not issue, return-
able August 15, 1910. The patent had previously been sustained by
the Circuit Court for the Eastern District of Wisconsin, and found to
be infringed by a muffler similar to the muffler of the defendant. On
August 11, 1910, which is a date between the issuance and return of the
rule, Grushlaw, acting upon advice of counsel and in fear that a pre-
liminary injunction, if directed against him, would find him with his
manufactured supply of mufflers on hand, sold all the mufflers he had
manufactured, gave to the vendee the names of his customers, and
stopped business. On August 29, 1910, the court entered its expected
decree for a preliminary injunction, conditioned, however, upon the
complainant filing an injunction bond in the sum of $10,000. With this
condition the complainant promptly complied. The litigation continued
until October 7, 1911, when the preliminary injunction was dissolved
and the bill thereafter dismissed, whereupon the cause was referred to
a special master to ascertain the losses and damages suffered by Grush-
law by reason of the injunction. The master disallowed Grushlaw's
claim for lost profits, past and prospective, and found that because of

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the injunction, Grushlaw had suffered damages as follows: Two months' rent for the premises in which he had installed his muffler manufactory, $83.32; depreciation in the value of machinery and equipment, $850.30; depreciation in the value of boxes and labels, made, designed, and printed especially for mufflers manufactured by him, $954.59, making a total of $1,888.21. Upon exceptions to the master's report, filed by both parties, the District Court approved the master's disallowance of Grushlaw's claim for profits, and reversed his finding of damages, upon the ground that the damages found were caused by Grushlaw abandoning his business before the injunction was issued and the bond given. On this appeal we are concerned only with that part of the decree which reversed the master's finding of damages.

[1] The question is, whether Grushlaw abandoned his business prior to the issuance of the writ of injunction, or, in order to save himself from threatened losses, merely suspended business pending the decision of the court on the motion for an injunction. If, by disposing of the mufflers in stock, Grushlaw voluntarily abandoned his business, then the losses and damages found by the master could not have been caused by the injunction subsequently awarded, and would have been sustained whether the injunction had been awarded or refused. If, on the contrary, Grushlaw merely suspended business pending decision on the motion, and intended and was prepared to resume business had the motion been dismissed, then the damages sustained may have been occasioned by the injunction. Upon the simple issue, therefore, whether the conduct of Grushlaw amounted to a suspension or an abandonment of his business, and accordingly whether the damages he sustained were caused by the injunction or by himself, hinges the decision on this appeal.

What was the conduct of Grushlaw and the motives which inspired it? Having on hand several hundred dozen mufflers of a type adjudged by another court to infringe the complainant's patent, he was advised that in all probability he would be enjoined disposing of them, whereupon he promptly sold them without awaiting the decision of the court. If Grushlaw had done nothing more and had permitted with indifference the litigation against him to take its course, the sale of the mufflers on hand and the stopping of the manufacture of mufflers might readily be construed an abandonment of the business. But Grushlaw was not indifferent to the results of the litigation. On the contrary, he vigorously opposed the motion for an injunction, and for more than a year contested the complainant's action to a successful conclusion. During a portion of that period he retained and paid rent for the premises leased for the sole purpose of manufacturing mufflers. Having equipped his plant with light and power, and having purchased machinery costing more than $1,700, which was particularly adapted to knitting mufflers, and having purchased yarn, boxes, and labels at a cost exceeding $3,600, he kept his plant for a time intact and ready for the resumption of manufacture. Having assembled a force of operators especially skilled in knitting mufflers, he retained a number of them by giving them other employment in which they were not skilled. With this equipment and organization, Grushlaw did nothing before the issuing of the prelimi-

nary injunction that would indicate an abandonment of the business for which it was established and brought together. His sole act, before the writ of injunction was issued, was to dispose of the manufactured mufflers in stock before their sale could be stayed by injunction, for loss upon which no damages were allowed by the master. His acts after the injunction consisted, first, in waiting, and then in gradually disestablishing the manufactory.

It is urged, however, that after the injunction was dissolved, Grushlaw did not resume the manufacture of mufflers, and therefore he must have abandoned their manufacture at the time he sold his stock. The injunction was dissolved on October 7, 1911, or about 14 months after it was granted. In the meantime, Grushlaw vacated the leased premises, stored a portion, and employed in other uses another portion, of the machines, discharged his employés, and packed away the unsalable raw materials. The reason given by Grushlaw for not resuming business was that at the period when, in May, 1910, he started to manufacture mufflers, the prospect for trade was good, but as time went on, the vogue for the particular style of mufflers he was prepared to make passed, and the opportunity for prosecuting a profitable business more than a year thereafter was gone. The failure of Grushlaw to resume, in October, 1911, the manufacture of the particular style of mufflers he was making in August, 1910, is not persuasive evidence that the business was abandoned by Grushlaw at the earlier period. On the contrary, the circumstances of the case are corroborative of the direct testimony of Grushlaw and his brother that in August, 1910, he suspended business, awaiting a favorable decision on the motion for a preliminary injunction, and intended to resume business in the event that the motion was denied.

[2] We are of opinion that the District Court erred in sustaining the exceptions of the complainant, and that the measure of damages found by the master should have been followed. We are not inclined to disturb the actual damages found by the master, in view of the well-settled rule, that:

"The conclusions of the master" on matters of fact "have every reasonable presumption in their favor, and are not to be set aside or modified, unless there clearly appears to have been error or mistake on his part." Continuous Glass Press Co. v. Schmertz Wire Glass Co. (C. C. A.) 219 Fed. 199, 205, cases cited.

The judgment below is reversed.