### BROWNELL IMPROVEMENT CO. v. SWEENEY.

(Circuit Court of Appeals, Sixth Circuit.  June 8, 1915.)

#### No. 2607.

1. **MASTER AND SERVANT** ☞286—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an action for injuries to an employé of a company engaged in railroad construction work, who fell from a plank alongside a railroad trestle, evidence *held* to make questions for the jury as to whether the trestle was still in course of construction and under the control of the employer, and whether it was used by workmen in going to and coming from their work with the employer's knowledge and permission.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ☞286.]

2. **MASTER AND SERVANT** ☞88—LIABILITY FOR INJURIES—UNSAFE PLACE TO WORK.

That an employé of a railroad construction company, injured by falling from a plank alongside a railroad trestle in course of construction, was on his way home from work, or that he had remained on the premises a short time after he was free to leave for the purpose of discharging a duty he thought owing to his employer by reporting a matter to the superintendent, did not make him any less an employé as respected the employer's duty to furnish a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. ☞88.]

3. **MASTER AND SERVANT** ☞291—ACTIONS FOR INJURIES—INSTRUCTIONS.

In an employé's action for injuries, an instruction that the defenses of assumption of risk, contributory negligence, or fellow servant had nothing to do with the case was not objectionable as leading the jury to suppose that there was no substantial defense, and that its duty was merely to assess damages.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133, 1134, 1136–1146; Dec. Dig. ☞291.]

In Error to the District Court of the United States for the Northern District of Ohio; William R. Day, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Action by Thomas Sweeney, executor of Thomas Finnerty, deceased, against the Brownell Improvement Company. Judgment for plaintiff, and defendant brings error. Affirmed.

L. B. Bacon, of Cleveland, Ohio, for plaintiff in error.

H. F. Payer, of Cleveland, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Thomas Finnerty, since deceased, recovered verdict and judgment against plaintiff in error, whom we shall call defendant, for personal injuries sustained, as alleged, through defendant's negligence while decedent was in its employ.

At and for some time before the accident defendant was engaged in certain railroad construction work for the Pennsylvania Company in Cleveland, including the building of a trestle for carrying three elevated railroad tracks, which tracks were all laid and in condition for use. There was also a surface track between the second and third elevated tracks, and several feet below the upper surface of the trestle. Decedent was employed as night watchman; his duties requiring him, as alleged, to pass, not only over the surface track, but over the elevated tracks, to guard certain of defendant's property upon the trestle. He was relieved from duty a little after 6:30 a. m. of the day on which the accident occurred, which was Sunday. According to his testimony, he waited some time for the appearance of defendant's superintendent, for the purpose of giving the latter information and report in defendant's interest; that between 7:30 and 8 o'clock, the superintendent not having appeared, decedent started home, walking up the incline of the trestle upon a plankway about 5 or 6 feet wide, between the first and second elevated tracks, his ordinary way from his work to his home being, as alleged, over the trestle; that while upon the level of the trestle he saw the superintendent on the track below, and accordingly called to and started toward him, walking across the two rails of the adjoining track (easterly) and then stepping upon a plank 12 inches wide spiked onto the outer (eastern) end of the ties, its inner edge being about 4 inches from the outer rail. As he stepped upon this plank his foot caught in what turned out to be a protruding spike in the plank and he was thrown down the incline, receiving serious injuries. It was decedent's claim that the plank in question was controlled and maintained by defendant, and was at the time, and long before had been, regularly in use by decedent and a large number of defendant's employés as a walkway in going to and returning from work, that such use was with defendant's knowledge and without its objection, and that defendant negligently permitted the existence of the projecting spike.

Defendant claimed that decedent was intoxicated at the time, and that the fall occurred from that cause; that decedent was discharged just before the accident because of this intoxication; that the plank was not in its control or being maintained by it at the time of the accident, but was under the sole control of the Pennsylvania Company, which had begun to run its trains over the trestle; and that the

plank was never intended as a walkway, but was merely a part of the track construction. Defendant's motion for instructed verdict was denied, and the case submitted under instructions that, in order to recover, it must be established (1) that the plank was at the time of the accident under defendant's control and management; (2) that it was used by defendant's workmen in going to and coming from their work as a necessary way or path for the purpose, openly and with defendant's knowledge and permission; (3) that decedent was necessarily and rightfully on the plank in the discharge of his duty to defendant, and in the course of his employment, for the purpose of communicating conditions of the work as night watchman to his foreman; and (4) that the accident was due to the defendant's negligence in permitting the protruding of the spike from the plank. There was also an instruction that if decedent was intoxicated, and staggered off the middle planking and onto the rails, and then upon the plank in question, from which he fell, he could not recover.

[1] There was substantial testimony tending to show the affirmative of each of the propositions so held by the court necessary to recovery. While there was testimony that decedent was intoxicated and was discharged, the jury apparently did not believe it; and there was abundant testimony sustaining the verdict in that regard. Although there was testimony that defendant no longer controlled or maintained the trestle and that it was in the sole control of the railroad company, which had taken upon itself the maintenance of the trestle, including the plank in question, there was testimony from which the jury might properly find that defendant had not yet completed its construction work, that it had at least a joint possession with the railroad company, and was still maintaining the premises, including the plank. Defendant was still at least engaged in a construction work of which the trestle formed a part, and had many employés thereabouts. Decedent testified that the trestle was not completed. There was also testimony that large numbers of defendant's employés were in the habit of using the plank in question as a regular way of passage between their homes and their work, and presumably with defendant's knowledge and approval; one witness, in especial, testifying that about 200 of defendant's employés went up and down the trestle mornings and evenings, and that the witness, an employé of defendant, supposed the plank in question was there to walk on. While the use of the plank in question was not (by reason of the planking between the first and second tracks) necessary in the sense of being absolutely indispensable to the use of the trestle as a passageway, its regular and convenient use tended to prove it, in a very proper sense, a necessary way. Decedent testified to the regular use of the plank as a walkway, and that he did not know "what other purpose it was used for." It is inferable from decedent's testimony that it was sometimes needed in avoiding switching trains and passing gangs of workmen with picks and shovels.

The existence of the board walk is thus not, in our opinion, sufficient of itself to overcome the effect of the positive testimony tending to show habitual use of the plank as a way of passage with defendant's

knowledge and presumed permission, especially in view of the fact that decedent was crossing the track and was upon the plank in the course of his duty, as alleged, and while on his way to communicate with defendant's superintendent.

[2] There was testimony from which the jury might properly find that defendant knew of the tendency of the spike to draw out of the plank and was negligent regarding it, and that the accident was actually caused by the protruding of the spike. That decedent was, if his testimony is to be believed, still in defendant's employ, is clear. The relation of employé was not lost by his remaining on the premises a short time after he was free to leave, for the purpose of conscientiously discharging a duty he thought owing to his employer; and he was none the less an employé, as respects a safe place to work, from the fact that he was on his way home from his work. Philadelphia, etc., R. R. Co. v. Tucker, 35 App. Cas. D. C. 123, 138, affirmed 220 U. S. 608, 31 Sup. Ct. 725, 55 L. Ed. 607. In fact, according to decedent's testimony, the trestle was his regular way of egress from defendant's premises. The court thus did not err in refusing to direct verdict for defendant.

[3] The jury was instructed that the defenses of "assumption of risk, contributory negligence, or fellow servant" had nothing to do with the case. The complaint made of this instruction is not that the defenses of contributory negligence and of assumption of risk were withdrawn, for both of these defenses were by the Ohio Workmen's Compensation Act denied to defendant through its failure to come under the act (102 Ohio Laws, p. 524, § 21–1). Forge Co. v. Moir (C. C. A. 6) 219 Fed. 15. The specific criticism is that the jurors were led to suppose by this instruction that there was no substantial defense, and that the jury's duty was merely to assess damages. We see no point in this criticism.

The judgment of the District Court is affirmed, with costs.