REPUBLIC IRON & STEEL CO. v. HINES.

(Circuit Court of Appeals, Sixth Circuit.    March 6, 1917.)

No. 2897.

1. TRIAL ⬤⟿296(6)—INSTRUCTIONS—CURE BY OTHER INSTRUCTIONS.
    In an action against an employer, who had not elected to come under the Ohio Workmen's Compensation Law, so that under 102 Ohio Laws, p. 529, § 21—1, he was liable for injuries to an employé, caused by the negligence of any of his employés, and could not rely on the defenses of contributory negligence or assumption of risk, error in stating in the charge that the employé assumed no risk which, standing alone, might mislead the jury to believe that he did not assume the risk of injury not resulting from the negligence of his employer or fellow servant, was harmless, where in the same paragraph there was an express reference to the employer's negligence as necessary to recovery, and in the preceding and following paragraphs the jury were explicitly charged that plaintiff could not recover until he had shown by substantive evidence that defendant or his employés were negligent.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 709.]

2. MASTER AND SERVANT ⬤⟿286(4)—INJURIES TO SERVANT—EVIDENCE—NEGLIGENCE OF MASTER—DEFECTIVE APPLIANCES.
    In an action for injuries to a steel mill employé, evidence held sufficient to warrant submitting to the jury the question whether defendant was negligent in furnishing plaintiff with light caps for use in covering open molds after they had been filled.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1011.]

3. MASTER AND SERVANT ⬤⟿286(27)—INJURIES TO SERVANT—EVIDENCE—NEGLIGENCE OF MASTER—DEFECTIVE METHOD.
    In an action for injuries to a steel mill employé, caused by the spurting of hot metal from a mold, evidence held sufficient to warrant submitting to the jury the question whether defendant was negligent in not using aluminum in the mold to counteract the tendency to spurt.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1032.]

4. MASTER AND SERVANT ⬤⟿286(41)—INJURIES TO SERVANT—EVIDENCE—NEGLIGENCE—FAILURE TO WARN—PROXIMATE CAUSE.
    In an action for injuries to a steel mill employé, evidence held to warrant submitting to the jury the question whether plaintiff was so inexperienced that the master's failure to warn was negligence, and whether such failure proximately caused the injury.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1046–1048.]

5. APPEAL AND ERROR ⬤⟿216(1), 263(3)—PRESENTING QUESTIONS BELOW—FAILURE TO CHARGE—EXCEPTION—REQUEST.
    Defendant cannot object on appeal to the court's omission to instruct the jury that failure to warn, to be actionable, must have been the proximate cause of injury, where he did not request such instruction, nor except to the charge for failure to contain it.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1518, 1525; Trial, Cent. Dig. §§ 627, 636.]

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. TRIAL ⊚⇒296(3)—INSTRUCTIONS—OMISSION IN CHARGE—CURE BY OTHER CHARGE.

In an action for injuries to an employé, where plaintiff alleged three grounds of negligence, and the court in its charge on two of them expressly required a finding that the negligence, if any, was the proximate cause of the injury, the omission of such express statement in the charge as to the third ground of negligence, though in another paragraph the court had stated that plaintiff contended that he was injured as a direct result of that negligence, which omission was not called to the trial court's attention, was harmless.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 709.]

In Error to the District Court of the United States for the Northern District of Ohio; John H. Clarke, Judge.

Action by James Hines against the Republic Iron & Steel Company. Judgment for plaintiff, and defendant brings error. Affirmed.

C. A. Manchester, of Youngstown, Ohio, for plaintiff in error.

Wm. R. Stewart, of Youngstown, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Defendant in error, while employed on the platform of the pouring floor in one of the mills of plaintiff in error in Youngstown, Ohio, was severely burned by the spurting of molten steel from one of the molds, and on trial by jury, in an action to recover for such injuries, obtained verdict and judgment. We shall designate the parties as they stood below, and shall consider the assignments of error in the order of their discussion in defendant's brief.

[1] 1. The injury occurred September 27, 1913, while the Ohio Optional Compensation Law was in force. Defendant was eligible to the provisions of the act, but did not elect to come under it. Section 21—1 of that act (102 Ohio Laws, p. 529) makes the employer in such case liable to its employés for damages for personal injuries resulting from the negligence of the employer, or of its officers, agents, or employés, and in terms eliminates as to such employer "the defense of the fellow servant rule, the defense of the assumption of risk, [and] the defense of contributory negligence." See Crucible Steel Forge Co. v. Moir (C. C. A. 6) 219 Fed. 151, 155, 135 C. C. A. 49; Brownell v. Sweeney (C. C. A. 6) 223 Fed. 513, 139 C. C. A. 58. Defendant requested no instruction upon the subject of assumption of risk. The court, on its own motion, charged that:

"Plaintiff assumed no risk in working on the platform provided by defendant, and you should not hold him responsible for the negligence of any employé or for any negligence on his part, and, if you find from the evidence that plaintiff was injured through the fault or negligence of a fellow workman, the defendant is liable to him for such injury."

The instruction that the "plaintiff assumed no risk in working on the platform" was excepted to, and is criticized here upon the ground that, notwithstanding the statute, plaintiff did assume the ordinary risks and dangers of operation not resulting from defendant's negligence, and which plaintiff knew or should have known.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Standing alone, the statement that "plaintiff assumed no risk in working on the platform" might have misled the jury; but it did not stand alone.  Not only did the paragraph of which it was a part itself contain express reference to the defendant's negligence· as necessary to recovery, but at the close of the paragraph immediately preceding that which contained the criticized instruction the jury was explicitly charged that plaintiff could not recover until he "has shown by substantive evidence that the defendant was negligent in some one or more of the three particulars" submitted as grounds of alleged negligence;  and, in addition, the paragraph containing this criticized instruction was immediately followed by a still further and equally explicit instruction that recovery could not be had if plaintiff has failed to prove that "the defendant was negligent in any of the three respects" referred to, or if defendant "has satisfied you that it was not negligent in any of the respects claimed."   In considering the effect and meaning of the charge, all of its elements must be taken into account;  and to assume that under the instructions quoted the jury would understand that plaintiff did not assume the risks of ordinary and nonnegligent operation would be unwarrantably to question the jury's intelligence.   The instruction was, to say the least, nonprejudicial.

In the process of pouring, the molds were brought to the required place adjacent to the platform by means of a railway track located several feet below the platform;  the molten steel being poured into ·the molds from a ladle containing several tons, carried by a crane. The molds which were being filled at the time of the accident were of the open top type, 7 feet or so in height, and with lateral dimensions of 24 inches by 32 inches, the tops of the molds being slightly above the level of the platform.   It was plaintiff's duty to place caps or covers upon the molds after the molten steel had been poured into them, and afterwards to chill the molds by turning water into them.   At the time he was injured the molds had been filled, and plaintiff was in the act of preparing to turn on the water, when the molten metal spurted from the top of one of the molds, causing the injuries in question. The grounds of defendant's alleged negligence submitted to the jury were:  (1) The use of a cover which was too small and too light;  (2) failure to use aluminum in the molds to quiet the boiling and prevent spurting;  and (3) failure to warn plaintiff of the dangers incident to his employment.   As to each of these three allegations of negligence its submission to the jury is excepted to as unsupported ˇby substantial evidence.

[2] 2. *The Caps.*  The spurting of metal from molds is due to the presence of gases in the molten metal.  The object of the plate or cover is to chill or "freeze over" the metal to prevent "bleeding," with resulting sponginess of the upper end of the ingot, which has to be sheared off.   There was evidence that several large manufacturers used heavy covers of cast iron, sometimes weighing 300 to 400 pounds, the covers being wedged down tight;  that others used no covers at all,

especially on large "open top" molds. Defendant used on the latter type of molds a soft steel plate, weighing only 25 to 35 pounds, and not fastened down; the molds, however, were equipped for wedging down the cover. There was testimony that these small steel plates had a tendency to warp, not found in the heavy cast iron plates. Defendant, on its part, presented testimony that the light cap is fully as effective as a heavy one in preventing spurting, and indeed that actual explosion is avoided by noncapping; also tending to show a more modern practice in favor of the light, unfastened plate; and, were the question to be determined on theoretical grounds alone, the proposition that greater protection, against explosion at least, is found in the use of heavy fastened plates, would perhaps not be highly persuasive. But there was direct testimony that the heavier cap is safer, and express testimony of witnesses of reasonable experience in certain large plants that they never knew of an explosion, or of spurting enough to hurt any one, when heavy cast iron plates were used; while there was testimony that "spurting," and the blowing off of caps from the large molds, frequently happened at defendant's plant, and that another workman had been hurt three weeks before plaintiff's injury by the blowing of the cap from a small mold. The evidence taken together failed to show conclusively that defendant, in using the lighter caps, was conforming to a practice prevailing generally among prudent manufacturers. It was at least consistent with a more or less experimental departure from a former, and still more generally followed, practice. Taking into account the weight to be given the testimony of the various witnesses, both on theoretical and practical grounds, the testimony thus presented a question of fact, upon which reasonable minds might differ, whether or not defendant, in using the small and light caps, exercised due care for the protection of its employés. It was thus not error to submit the question to the jury.

[3] 3. *The Use of Aluminum.* Aluminum placed in small quantities in the molds while being filled tends to quiet the "wildness" of the metal and the tendency to "spurt." Its use for this purpose was quite common. The quieting effect is said to be due to its absorption of the gases in the "heat." Defendant had for a long time used aluminum for this purpose. There was evidence, however, that it left a spongy end upon the ingot that had to be sheared off, and some testimony that it had a deleterious effect upon the metal, at least for some purposes; that silicon (which is much cheaper than aluminum) placed in the ladle had the same quieting effect as aluminum; that some customers, in ordering steel, specified the nonuse of aluminum; and that defendant had used silicon considerably in place of aluminum. Silicon was used in the heat in question. The specifications for the product then being manufactured neither called for nor excluded aluminum. There was no dispute over the proposition that the use of aluminum directly tended to reduce the danger of explosion and of spurting. It also appeared that low carbon steel was more likely to "spurt" than high carbon, and there was testimony that the heat in question was low carbon.

Defendant had for a long time used aluminum in the making of good steel. The testimony of its bad effect generally upon the product, and that silicon was as effective a deterrent of spurting, was not conclusive. Plaintiff testified that aluminum was used during all the time he worked for defendant, except from about September 1st to September 27th (the date of the the accident), and that until the accident there was no spurting or explosion within his knowledge. (The other workman, who was burned 3 weeks before plaintiff was hurt, did not work on the same "turn" with plaintiff.) It not only cannot be said to appear conclusively that manufacturers generally had adopted or regarded silicon as a proper substitute for aluminum in all cases, but it was open to conclusion that the more general practice was to use aluminum, especially in pouring low carbon steels, unless where silicon was expressly specified. It was thus not error to submit the question of due care as respected the nonuse of aluminum.

[4] 4. *The Failure to Warn.* Plaintiff entered defendant's employ about 3 months before the accident. While he had worked 16 years in iron and steel mills, he testified that he had never worked around molten steel in molds, and gave testimony tending to show that before the accident he had no knowledge or information of the tendency of molten steel to spurt from the molds. His testimony as to. defendant's failure to warn him of the attendant danger is undisputed. Indeed, the employé to whom plaintiff was caused to report for work, and who (as pourer) worked with plaintiff on the platform, testified that he told plaintiff nothing about the likelihood of the mold's exploding or of the metal's spurting out on him; that the witness had seen the metal bubble out, "but did not think to tell him about that."

In view of the testimony referred. to, the contention that it was error to submit the question of failure to warn is without merit. Casey-Hedges Co. v. Oliphant (C. C. A. 6) 228 Fed. 636, 639, 640, 143 C. C. A. 158. Whether plaintiff was familiar with the risk of metal spurting was a question for the jury.

We are not impressed with the suggestion that the failure to warn could not have proximately caused the accident, because warning could not have prevented it, in the fact that plaintiff was several feet away from the mold at the time of the spurting, and in the act of turning on the water.

[5, 6] In this connection defendant criticizes the alleged omission to instruct the jury that failure to warn, in order to be actionable, must have been the proximate cause of the injury. There was no request for such instruction, and no exception to the alleged failure to so instruct, and defendant recognizes that it is not in position to insist on that point. Denison v. McNorton (C. C. A. 6) 228 Fed. 401, 407, 142 C. C. A. 631. But the point itself has no merit. In the instructions respecting both the matter of caps and the failure to use aluminum, proximate cause was expressly included as an element of the right of recovery. In the actual instructions respecting the effect of failure to warn the reference to proximate cause was omitted, but in the paragraph immediately preceding that instruction the court, in stating plaintiff's contention, included as an element of that claim:

240 F.—6

"And that as the direct result of this failure on the part of defendant to notify him of this danger the plaintiff received the injuries of which he complains in this case."

The failure to include these words in the following paragraph was doubtless inadvertent, and they would no doubt have been added had attention been called to their omission. The omission was not prejudicial.

The judgment of the District Court is affirmed.