### THE P. P. MILLER et al.

(District Court, W. D. New York. May 9, 1910.)

1. SEAMEN (§ 29*)—PERSONAL INJURIES—SAFE PLACE TO WORK.

Where libelant had had an extended experience of eight or nine years as fireman on ocean steamers, and had been an employé of vessels in various capacities since boyhood, though probably not as a deck hand, when he took employment on a vessel as deck hand, and was an intelligent workman, and knew enough about the handling of tow lines to understand the obvious dangers of such employment, there was no duty on the vessel to warn or instruct him against obvious dangers in respect thereof; she not having insured his safety, and her obligation to him being fulfilled when a reasonably safe place was provided for him to work in, and the vessel was not liable for injuries to him from becoming entangled in a tow line drawn through the chock by a tug.

[Ed. Note.—For other cases, see Seamen, Dec. Dig. § 29.*]

2. NEGLIGENCE (§ 5*)—ACTS CONSTITUTING—CUSTOM.

One committing apparently negligent acts is not relieved from liability therefor, though such acts constituted a custom or practice.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 7; Dec. Dig. § 5.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. MASTER AND SERVANT (§ 150*)—NEGLIGENT ACTS OF EMPLOYÉS—DUTY OF MASTER.**

Where a custom or practice is adopted by employés from which it is likely that injuries may result, it becomes the employer's duty to exercise reasonable precaution to prevent the continuance of such practice.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 150.*]

**4. SEAMEN (§ 29*)—INJURIES TO EMPLOYÉ—NEGLIGENCE.**

A custom of employés of a tug, which was not a general custom, of suddenly and forcibly moving the tug ahead which had just taken the tow line of a tow and without notice to the tow, or the seamen on board thereof having charge of the line as it runs out through the opening, where such employés were stationed where they could not see the tug, was an act apparently fraught with danger; and it was an omission of duty of the tug not to warn the tow and the servant having charge of the line thereof of her intention to pull on the tow line rendering the tug liable for injuries to such an employé of the tow proximately resulting therefrom, in the absence of his contributory negligence.

[Ed. Note.—For other cases, see Seamen, Dec. Dig. § 29.*]

**5. SEAMEN (§ 29*)—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE.**

Where a steamer which was to be towed was not at the time ready to leave the dock, she not having released the dock lines, or signaled the tug to proceed ahead as was customary, and an employé on the tow had no reason to suppose that the tug would suddenly start immediately after enough of the tow line had been passed out and wound around the post of the tug, which the tug did, injuring such employé, his failure to stand away from the tow line while it was passing out did not constitute contributory negligence.

[Ed. Note.—For other cases, see Seamen, Dec. Dig. § 29.*]

In Admiralty. Libel by Thomas McQueen against the steamer P. P. Miller, her engines, etc., and another. Libel dismissed as to the mentioned respondent, and a decree for libelant as to the other.

Gorman & Harwood and George Clinton, Jr., for libelant.
Goulder, Holding & Masten, for steamer P. P. Miller.
Hoyt & Spratt and Alfred L. Becker, for tug Yale.

HAZEL, District Judge. This is a libel in rem against the steamer P. P. Miller and the steamtug Yale to recover damages for injuries sustained in November, 1908, by the libelant, who was employed as a deck hand on board the steamer through the asserted negligence of both the steamer and the tug. The steamer was tied fast to the Lackawanna coal dock at Buffalo preparatory to departing on a trip up the lakes, and just before the accident the libelant and two other seamen were directed by the mate of the steamer to pass the harbor line to the tugboat Yale, which had been engaged to tow the steamer out to the open lake. One of the seamen sent forward to handle the lines lifted the tow line from the breast hook, and thrust the end through the forward chock on the right-hand side of the vessel, and about 40 or 50 feet of the line had been passed out. Meanwhile the libelant was directed by the mate to unhook the chain bridle, which was at the inboard end of the tow line, when suddenly, and while thus engaged, the tow line without warning forcibly and rapidly ran out through the starboard chock. The libelant in an endeavor to escape the entanglement had his left leg severed from his body in the bight of the line,

and it was carried with the line through the chock. It is conceded that the sudden running out of the tow line was due to the movement ahead of the tug and consequent strain on the line. The asserted negligence of the steamer is principally predicated upon her failure to instruct the libelant as to his duties and for omitting to properly acquaint him with the dangers and risks attending work of this character. The negligence of the tug Yale is charged owing to her quick movement ahead, causing the tow line to strain and run out through the chock of the steamer without giving notice of her movement to the libelant and those handling the line.

As to the responsibility of the steamer: The testimony of the libelant that he informed the mate of the P. P. Miller who employed him that he was inexperienced, and not familiar with the duties of deck hand, or with handling the lines, is contradicted by the mate. Libelant admits that he expressed a wish to ship as a common seaman, and also that he had an extended experience of eight or nine years as fireman on ocean steamers. Indeed, his testimony shows that he had been an employé of vessels in different capacities since boyhood, though probably not as deck hand, having sailed to India, South America, around the Horn and generally around the world. It is not conceivable that his ignorance of the duties of deck hand extended to his utter inability to properly handle a tow line so as to entitle him to invoke the rule of negligence of the vessel for failure to properly instruct him in the dangers of the employment. He is an intelligent workman, and knew enough about the handling of lines to understand the obvious dangers from employment of this description. Hence there was no duty on the steamer to warn or instruct him against any obvious dangers. She did not insure his safety, and her obligation to him was fulfilled when a reasonably safe place was provided for him to work in. True, the vessel under certain circumstances is obliged to care for a seaman injured in its service while sick, to cure him, and furnish maintenance so long as the voyage continues (The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760), but no recovery is sought on that ground, and, in view of what follows regarding the sole liability of the tugboat, this rule has no application. In my judgment there was no negligence on the part of the steamer contributing to libelant's unfortunate injury, and as to her the libel must be dismissed.

The case, however, as to the Yale stands differently. It is clearly shown that the master of the tug should have known that there were seamen handling the line in the windlass room of the steamer at the time the tug took a quick pull on the line. He could not see the libelant or his associate, and they were unable from where they stood to see the tug without first looking through the port light. The witnesses for the respondent, Hazen and O'Neil, testified that the line became jammed in the chock of the steamer, but the master of the tug testified that he was not so informed. His version is that, as soon as the line was made fast on the timber head of the tug, he started ahead a short distance without giving notice to the steamer because it was his custom to take the tow line of the steamer in that way; that customarily a slack was taken on the line by working the engine ahead; that whenever the line became jammed in the chock it was his custom

to warn the men on board the vessel to clear the line. Five expert witnesses for the Yale substantially testified that it was customary to propel the tug ahead a short distance without giving notice to the steamer or the linesmen directly after taking the line, and making it fast to the tow post so as to straighten out kinks or keep the line from trailing in the water, and then remain inactive, but in readiness to tow out the vessel on the instant the "all right" signal is given. This testimony, however, was contradicted by witnesses sworn in behalf of the libelant and of the steamer Miller, which indicates a different and safer practice. The weight of the evidence supports the claim that there was no such general custom as claimed by the tug Yale. The master of the Miller had never heard of it, and did not know that such was the custom of the Yale. The law is well settled that a course of conduct which is apparently negligent cannot relieve the wrongdoer from the consequences of his act. Fletcher v. Baltimore & P. R. Co., 168 U. S. 135, 18 Sup. Ct. 35, 42 L. Ed. 411; Wright v. Boller, 42 Hun, 77. Where a custom or practice is adopted by employés from which it is likely that injuries may result, it becomes the duty of the employer to exercise reasonable precaution to prevent the continuance of such practice; hence the custom of suddenly and forcibly moving the tug ahead which had just taken the tow line of the steamer and without notice to her or the seamen on board the steamer having charge of the tow line as it runs out through the opening and who are stationed where they cannot see the tug was an act apparently fraught with danger, and it was an omission of duty not to warn the steamer and the libelant of her intention to pull on the tow line. The witness Hazen testified that, after taking the tow line and tying it around the tow post on the tug, some one engaged in handling the line on the steamer called out to "go ahead" and that he repeated the call to Capt. Green of the tug or to the engineer, but as neither Capt. Green nor the engineer nor any other witness gives corroborative testimony, and as the libelant denies hearing it and disclaims hearing Davidson, his associate (who was not interrogated on this point), do so, I cannot give such testimony full credence. Considering all the evidence, it is not thought improbable that, as claimed by the witnesses Hazen and O'Neil, the line was jammed in the chock and did not run out freely, and that an admonition was given by Hazen to the engineer, who was not called as a witness, to go ahead, which he did with alacrity, and before the master of the tug knew of the jamming and before warning was given to the steamer. I am satisfied that the quick starting ahead of the tug without warning libelant of her intention was the approximate cause of the accident, and the tugboat was negligent as a result of which libelant without fault on his part sustained the injuries complained of. The steamer was not at this time ready to leave the dock. She had not released the dock lines nor signaled the tug as was customary to proceed ahead, and libelant had no reason to suppose that the tug would suddenly and forcibly start immediately after enough of the tow line had been passed out to wind around the post of the tug. Under the circumstances, the claim of contributory negligence based upon libelant's failure to stand away from the tow line is not proven, and I think he was without fault.

As to the damages: Libelant lost his left leg just above the knee, and, as may well be supposed, suffered great pain. He was 42 years old, unmarried, strong, athletic, and robust, and has now become crippled and manifestly will be hampered in the performance of his vocation as a fireman of engines and also in the ordinary work of a laborer. He will probably always have some difficulty in securing remunerative employment.

Under the circumstances I think an award of $5,500 for the injuries he has sustained, the pain and suffering, the expense of his cure, the loss of time, and his inability to earn his usual wage would not be unreasonable.

A decree may be entered accordingly.