85 F.2d 944 (1936)
THE STATE OF MARYLAND.
MARSHALL
v.
MANESE.
No. 4045.
Circuit Court of Appeals, Fourth Circuit.
October 6, 1936.
Rehearing Denied November 9, 1936.
Leon T. Seawell, of Norfolk, Va., for appellant.
L. S. Parsons, of Norfolk, Va. (Sidney Sacks and Venable, Miller, Pilcher & Parsons, all of Norfolk, Va., on the brief), for appellee.
Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.
PARKER, Circuit Judge.
This is an appeal from a decree in favor of libelant in a suit in admiralty instituted against the steamship State of Maryland to recover damages on account of personal injuries. Libelant was an inexperienced youth employed as a fireman on the vessel. He was seriously burned about two months after his employment as the result of an explosion in the oil burning equipment, which it was his duty to operate. He alleges that the explosion occurred because of the defective condition of the equipment which rendered the vessel unseaworthy, and also because he had not been properly instructed as to the use of the equipment and warned as to the dangers to be avoided in using same. The trial judge, without passing on the question of unseaworthiness, awarded damages to libelant in the sum of $1,500 on the ground that the injury had resulted from the fault of the vessel in failing to give adequate instruction and warning to a youthful and inexperienced seaman with respect to the dangers of the work which he was required to perform.
It appears that the explosion occurred while libelant was attempting to light the oil burner in the pit furnace beneath the vessel's boilers without having first opened the lower draft. The opening of the lower draft of the furnace before the application of the torch to the burner is important, as thereby dangerous vapors and gases are drawn out of the furnace before there is opportunity for them to come in contact with the fire. The trial judge found that this was the proper method to follow in lighting the furnace; and with respect to the failure to instruct libelant accordingly and warn him of the danger in failing to follow such method, said: "While there is direct and sharp conflict about the instructions that were given to the libellant with *945 respect to the procedure to be followed in lighting the burner in a pit furnace, I have accepted the testimony of libellant on that point as correct. He testified that on the occasion in question he opened the top draft first. The explosion occurred as he stooped to open the lower draft. Libellant was positive in his testimony that in thus performing the work he followed the instructions which he received upon entering the employment of respondent in the capacity of fireman. * * * A great deal has been said in the arguments with respect to libellant's experience and intelligence. It is true that he is an alert young man of intelligence and had been on the vessel about two months when the injury occurred. It is also true, however, that this was the first position he had ever held and that when he entered upon the work he was manifestly inexperienced both in performing the work and in avoiding dangers incident thereto which were not open and obvious. If he had been properly instructed with respect to the correct method to be followed in lighting a pit furnace I should hold that there is no liability upon respondent for his injuries, beyond making proper provision for his wages, maintenance and cure, in accordance with the well known rule applicable to injured seamen. However, in opening the top draft first he followed the example which was set for him by the employee of respondent assigned to instruct him, and the evidence fails to show that the dangers attendant upon that method were known to him or had ever been brought to his attention. The respondent was, therefore, negligent in failing to give an inexperienced man proper instructions as to the safe method of doing the work in which he was engaged when injured. Under such circumstances a decree in favor of libellant awarding him reasonable compensation for his injuries should be entered."
The learned trial judge saw and heard the witnesses and visited the vessel and inspected the appliances which caused the injury, and was consequently in much better position than any appellate court could possibly be to pass upon the conflicting contentions of the parties. It is well settled that in such case we should not disturb his findings unless they are clearly wrong; and there is nothing in the record before us which would justify us in disturbing them. As this is not a suit under the Jones Act, 46 U.S.C.A. § 688, the case comes to this: Whether under the general maritime law there is liability on the part of a vessel for failure to instruct a green and inexperienced seaman as to his duties and to warn him as to dangers to be avoided in the handling of machinery with which he is not familiar.
Seamen are the wards of admiralty, and the policy of the maritime law has ever been to see that they are accorded proper protection by the vessels on which they serve. In early days, this protection was sufficiently accorded by the enforcement of the right of "maintenance and cure." Vessels and their appliances were of comparatively simple construction, and seamen were in quite as good position ordinarily to judge of the seaworthiness of a vessel as were her owners. The principles of the fellow-servant doctrine prevailed in the maritime as well as in the common law; and, in requiring that seamen on a voyage who became ill or were injured in the service of the vessel should be supported and cared for and paid their wages until recovery, the maritime law provided for them a more humane and effective remedy than was afforded by the common law to the employee on land. For failure to provide "maintenance and cure," the seaman had a right to indemnity for the damages resulting from this breach of duty which he might enforce against the vessel. The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 48 L. Ed. 955; Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368.
With the advent of steam navigation, however, it was realized, at least in this country, that "maintenance and cure" did not afford to injured seamen adequate compensation in all cases for injuries sustained. Vessels were no longer the simple sailing ships, of whose seaworthiness the sailor was an adequate judge, but were full of complicated and dangerous machinery, the operation of which required the use of many and varied appliances and a high degree of technical knowledge. The seaworthiness of the vessel could be ascertained only upon an examination of this machinery and appliances by skilled experts. It was accordingly held that the duty of the vessel and her owners to the seaman, in this new age of navigation, extended beyond mere "maintenance and cure," which had been sufficient in the simple age of sailing ships; that the owners owed to the seamen the duty of furnishing a seaworthy vessel and safe and proper *946 appliances in good order and condition; and that for failure to discharge such duty there was liability on the part of the vessel and her owners to a seaman suffering injury as a result thereof. The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760. In the Edith Godden (D.C.) 23 F. 43, 46, which dealt with the case of a seaman injured by a defective derrick, Judge Addison Brown pointed out that in dealing with injuries sustained by the use of modern appliances "it is more reasonable and equitable to apply the analogies of the municipal law in regard to the obligation of owners and masters, rather than to extend the limited rule of responsibility under the ancient maritime law to these new, modern conditions, for which those limitations were never designed."
On the same principle that the vessel and her owners are held to liability for failure to make her seaworthy, or to supply and keep in order proper appliances, they should be held liable for failure to instruct a youthful and inexperienced hand employed to work around dangerous machinery and to warn him of the dangers to be encountered. Even safe and proper machinery and appliances may be dangerous to a green and inexperienced employee; and the same principle which imposes the duty of furnishing safe and suitable appliances imposes also the duty to warn and instruct, i. e., the duty of taking all reasonable precaution that the employee shall be free of unnecessary dangers in the performance of his duties. There can be no question as to the duty to instruct and warn under the principles of our municipal law. Mather v. Rillston, 156 U.S. 391, 399, 15 S. Ct. 464, 39 L.Ed. 464; Casey-Hedges Co. v. Oliphant (C.C.A.6th) 228 F. 636; Atlantic Coast Line R. Co. v. Linstedt (C.C. A.4th) 184 F. 36; 39 C.J. 514 and cases cited. And there is an even stronger reason for applying the doctrine in the maritime law, where because the seaman has not the privilege of quitting the service or exercising his own judgment, the owners should be held to the strictest rule of diligence and care. See The Edith Godden, supra.
In Cook v. Smith (C.C.A.3d) 187 F. 538, which was decided under the general maritime law before the passage of the Jones Act, it was held by the Circuit Court of Appeals of the Third Circuit that the owners of a vessel were liable for damages sustained by a youthful and inexperienced employee as a result of failure to warn and instruct, and that the rule as to liability for negligence of a coservant was not applicable. This case cannot be distinguished on the ground that it involved a limitation of liability proceeding rather than a libel in rem. Action for recovery of damages was, it is true, filed in a state court; but this was removed by the owner to the federal court in a petition which asked limitation of liability and reserved the right to contest any liability whatever. Smith v. Cook (D.C.) 164 F. 628. The determination of liability was made under the general admiralty law; and, if liability under that law existed for personal injuries it could be enforced by an in rem proceeding against the vessel. The Sylph, L.R. 2 Ad. & Ec. 24; The Corsair, 145 U.S. 335, 345, 348, 12 S.Ct. 949, 36 L.Ed. 727; Leathers v. Blessing, 105 U.S. 626, 26 L.Ed. 1192; The City of Panama, 101 U.S. 453, 25 L. Ed. 1061; The Anaces (C.C.A.4th) 93 F. 240. In The P. P. Miller (D.C.) 180 F. 288, 290, Judge Hazel, although denying recovery because the case was not within the rule, clearly recognized the rule to be that there was liability on the part of the vessel for failure to instruct as to the dangers of the employment. And in McKenna v. Union S. S. Co. (D.C.) 215 F. 284, 285, Judge Dooling, in holding that there was no negligence in failing to instruct an experienced seaman, said: "His is not the case of a minor, nor of one whose lack of experience on board ship would cast upon his employer the duty of instructing him in the method of performing the work which his position called for."
Appellant relies upon The New York (C.C.A.2d) 204 F. 764; but that was a case where the employee was injured by the adoption of an obviously dangerous method of doing his work when a patently safe method had been provided. The statement that negligence in failing to warn was negligence of fellow servants for which the owners were not responsible was not necessary to the decision and was obviously not intended as a careful statement of the rule. If the duty to warn exists, it is, as was held in Cook v. Smith, supra, a nondelegable duty; and for negligence with respect thereto the employer or owner is liable. If we may look to the municipal law for guidance, no doctrine is there better settled. 39 C.J. 490; Lehigh Valley Coal Co. v. Lukaszunas (C.C.A.2d) 230 F. 792; Alpha Portland Cement Co. v. Curzi (C.C.A.2d) 211 F. 580, 587; Freedom Casket Co. v. *947 McManus (C.C.A.3d) 218 F. 323; Peters v. George (C.C.A.3d) 154 F. 634, 639. As said by Judge Gray, speaking for the Circuit Court of Appeals of the Third Circuit in the case last cited: "The question is always, whether the negligence charged is the neglect of a primary and absolute duty of the master to the servant. If such be its character, no delegation of the performance of that duty to another, no matter how inferior his rank may be in the master's service, can, as we have already said, relieve the liability of the master for its neglect. The master does not insure the safety of the servant, but he does undertake that the place in which he works, and the appliances with which he works, and the conditions under which he works, shall be reasonably safeguarded. A dereliction of the humblest employee in the master's service, to whom any part of such duty has been delegated, is the dereliction of the master. Therefore, in the language of the opinion just referred to, it will be seen that the question turns rather on the character of the act than on the relation of the employees to each other. It has never been doubted that a master's duty to an ignorant or inexperienced workman, indeed to any workman about to undertake more than ordinarily dangerous work, is to explain its dangerous character and give adequate caution as to its prosecution. This duty is of the absolute, personal character above referred to, and is not discharged by merely intrusting its performance to a properly selected subordinate. Nothing short of actual notice of the danger to the workman who is to encounter it, with such cautionary explanation as may enable him to avoid it, will satisfy the requirement of the law, and the default of the intermediary, whether he be the highest officer in control, or merely a fellow workman of the one exposed to the danger, is the default of the master. In such a case, all question as to whether the immediate cause of the injury was the negligence of a fellow servant, is eliminated, and inquiry as to the extent of the control and authority committed by the master to the culpable agent, beside the issue, which is solely as to the character of the act or omission, and not the rank, of the offending servant."
We are advertent to the fact that in The Osceola, supra, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760, the Supreme Court, in stating the liability of the vessel and her owners for injuries received in consequence of unseaworthiness or failure to provide proper appliances made no reference to any liability on account of failure to instruct or warn, and that the same thing occurred in Cortes v. Baltimore Insular Line, 287 U.S. 367, 370, 53 S.Ct. 173, 174, 77 L. Ed. 368. The first of these cases, however, had to do with liability of the vessel on account of the negligence of the master and the second with liability under the Jones Act for death resulting from failure to furnish maintenance and cure; and neither is authority for the proposition that there is no liability on the part of the vessel for injuries resulting from failure to warn or instruct an inexperienced employee. The duty to warn and instruct is so closely akin to that of furnishing suitable appliances as to be in reality a part of the doctrine relating thereto. Both duties arise out of the same general principle of liability; and it is more reasonable to think that in stating the rule of liability, which was not applied in either of the cases mentioned, the court either overlooked the duty to warn and instruct or else regarded it as comprehended within the rule as stated, than it is to think that the court intended to exclude such duty as furnishing a basis of liability while including the duty so closely related of keeping appliances in proper repair and keeping the vessel seaworthy. Especially is this true when it is remembered that seaworthiness has relation not merely to the condition of the vessel itself, but also to storage of cargo and the furnishing of an adequate crew. See Oxford Paper Co. v. The Nidarholm, 282 U.S. 681, 51 S.Ct. 266, 75 L.Ed. 614; The Vincennes, Fed.Cas.No. 16,945; M'Lanahan v. Universal Ins. Co., 1 Pet. 170, 183, 7 L.Ed. 98.
The scope of the ancient maritime lien was unquestionably broadened when liability to seamen for injuries arising on account of unseaworthiness and defective appliances was recognized. As thus broadened, it covers liability arising from failure to discharge most of the nonassignable duties of the master recognized at common law, i. e., failure to provide a safe place to work, failure to provide safe and suitable appliances to work with, failure to keep machinery and appliances in safe order and condition, failure to provide a sufficient number of competent fellow servants to perform the work, etc. An application of the stricti juris rule to exclude liability for injuries arising from failure to warn and instruct will deprive the most *948 helpless class of employees, i. e., those who are youthful and inexperienced, of any adequate remedy, upon a distinction which will not bear analysis in the minds of practical men, and which will affect the maritime lien to an extent which is infinitesimal in comparison with its extension to cover liability for unseaworthiness and defective appliances. It is unreasonable to think that the law would thus strain at a gnat while swallowing a camel.
Any thought that the youthful or inexperienced seaman will have an adequate remedy under the Jones Act, even though he be held to have no remedy against the vessel under the general maritime law, may be put out of mind. If there is no duty on the part of the vessel or her owners to warn or instruct, there can be no negligence on the part of the master or crew in failing to give such warning or instruction, and no liability on the part of any one for putting an ignorant and helpless man in a situation where he is surrounded by hidden dangers without a word of warning as to their existence or instruction as to how they may be avoided.
Recognition of the general principle upon which liability for injuries arising from failure to warn and instruct must rest, i. e., the duty of taking all reasonable precaution that the employee shall be free of unnecessary dangers in the performance of his duty, is found in the decision of the Supreme Court to which we have adverted. That principle has been applied by the Circuit Court of Appeals of the Third Circuit in Cook v. Smith, supra, where failure to warn and instruct was directly involved. That the principle shall be so applied is well settled in the municipal law, where duties arising from the relationship of master and servant have been worked out in great detail. And no case has been found denying that it should be so applied in the maritime law, unless The New York, supra, be so considered, notwithstanding the fact that the failure to warn and instruct was there treated as mere negligence of a fellow servant and not of the vessel or owner.
In this state of the decisions we feel that the courts should not hesitate to declare the law to be as we have stated it. Such declaration is not judicial legislation, but the application of well-settled legal principles to a relationship which has been greatly changed since the early days of the maritime law as a result of the introduction of complicated and dangerous machinery. Law is not a static thing, bound down by prior decisions and legislative enactments. It is based on reason, arises out of the life of the people, and must change as the conditions of that life change. Funk v. United States, 290 U.S. 371, 382-386, 54 S. Ct. 212, 215, 78 L.Ed. 369, 93 A.L.R. 1136; Hurtado v. California, 110 U.S. 516, 530, 4 S.Ct. 111, 292, 28 L.Ed. 232. In the Funk Case, supra, Mr. Justice Sutherland quoted from Hurtado v. California as follows: "It is more consonant to the true philosophy of our historical legal institutions to say that the spirit of personal liberty and individual right, which they embodied, was preserved and developed by a progressive growth and wise adaptation to new circumstances and situations of the forms and processes, found fit to give, from time to time, new expression and greater effect to modern ideas of self-government. This flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law. * * * And as it was the characteristic principle of the common law to draw its inspiration from every fountain of justice, we are not to assume that the sources of its supply have been exhausted. On the contrary, we should expect that the new and various experiences of our own situation and system will mould and shape it into new and not less useful forms."
And to this he added: "To concede this capacity for growth and change in the common law by drawing `its inspiration from every fountain of justice,' and at the same time to say that the courts of this country are forever bound to perpetuate such of its rules as, by every reasonable test, are found to be neither wise nor just, because we have once adopted them as suited to our situation and institutions at a particular time, is to deny to the common law in the place of its adoption a `flexibility and capacity for growth and adaptation' which was `the peculiar boast and excellence' of the system in the place of its origin."
The same principle of growth is recognized in the maritime law in The Osceola, supra, where, at 189 U.S. 158, at page 175, 23 S.Ct. 483, 487, 47 L.Ed. 760, the court said: "It will be observed in these cases that a departure has been made from the Continental Codes in allowing an indemnity beyond the expense of maintenance and cure in cases arising from unseaworthiness. *949 This departure originated in England in the Merchants' Shipping Act of 1876, above quoted (Couch v. Steel, 3 El. & Bl. 402; Hedley v. Pinkney & Sons' S. S. Co., 7 Asp.M.L.C. 135 [1894] App.Cas. 222), and in this country, in a general consensus of opinion among the circuit and district courts, that an exception should be made from the general principle before obtaining, in favor of seamen suffering injury through the unseaworthiness of the vessel. We are not disposed to disturb so wholesome a doctrine by any contrary decision of our own."
We cannot think that under the principles of the maritime law as applied to modern conditions, the youthful or inexperienced seaman who is crippled or maimed because put to work around dangerous machinery with which he is not familiar, without instruction or warning as to the dangers which surround him, has no remedy for the injury which he has sustained except "maintenance and cure." If, as argued, the decisions do not recognize any other right on his part, it is high time that this were remedied and the law as declared in the decisions were brought in harmony with the conditions of modern life and the enlightened conscience of the age in which we are living.
If the negligence relied on were mere negligence of the master or crew of the vessel there could, of course, be no recovery against the vessel under the general maritime law, but libelant would be limited to recovery against the owners under the Jones Act. The Osceola, supra; Plamals v. The Pinar Del Rio, 277 U.S. 151, 156, 48 S. Ct. 457, 458, 72 L.Ed. 827. For the reasons stated, however, we are of opinion that under the general maritime law the duty to warn and instruct a youthful and inexperienced workman is a duty resting upon the owners of the vessel, just as is the duty to furnish a seaworthy vessel and suitable appliances in good order and condition; that such duty is nondelegable; and that for negligence in its performance the vessel as well as her owners may be held to liability, just as in the case of injury resulting from unseaworthiness or defective appliances. The decree appealed from will accordingly be affirmed.
Affirmed.
CHESNUT, District Judge (dissenting).
I find that I am not able to concur in the statement of the general maritime law which is made the basis of the decision in the opinion of the majority of the court in this case. The holding is that the failure to sufficiently instruct an inexperienced seaman in the duties to be performed by him constitutes negligence in the performance of a non-delegable duty owing by the shipowner, and that compensatory damages (as distinct from maintenance and cure) can be enforced by a libel in rem against the ship although there is no finding of unseaworthiness or defective appliances, or refusal or neglect to provide maintenance and cure.
The effect of the holding is to establish a new maritime lien not hitherto known in admiralty. I had supposed that the law was established to the contrary by the case of The Osceola, 189 U.S. 158, 175, 23 S. Ct. 483, 47 L.Ed. 760, decided by the Supreme Court in 1902 and not subsequently modified or departed from so far as I have been able to ascertain. On the contrary, on the particular point, the doctrine of that case has been recently reaffirmed in Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 370, 53 S.Ct. 173, 174, 77 L.Ed. 368, where Mr. Justice Cardozo, speaking for the Court, said:
"By the general maritime law, a seaman is without a remedy against the ship or her owners for injuries to his person, suffered in the line of service, with two exceptions only. A remedy is his if the injury has been suffered as a consequence of the unseaworthiness of the ship or a defect in her equipment. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 38 S. Ct. 501, 62 L.Ed. 1171; Pacific Co. v. Peterson, 278 U.S. 130, 134, 49 S.Ct. 75, 73 L.Ed. 220. A remedy is his also if the injury has been suffered through breach of the duty to provide him with `maintenance and cure.'"
The conclusion of the court is reached by extending the liability of the ship, in the situation stated, on the same principle that the vessel and her owners are held to liability for failure to make her seaworthy, or to supply and keep in order proper appliances appurtenant to the ship. This, I think, is an extension of the general maritime law adopted by analogy from the common or municipal law relating to master and servant, and is contrary to previously *950 established precedent as to the general maritime law. In Benedict on Admiralty, Vol. I, 5th Ed. s. 15, the law in this respect is succinctly stated as follows:
"The maritime lien, being secret and operating adversely to a ratable distribution of assets among creditors, as well as adversely in many instances to the rights of prior mortgagees and purchasers without notice, is stricti juris, rests in each case on precedent and will not be extended to other classes of cases by construction, analogy or inference."
For this statement of the law the author cites and is supported by the cases of Vandewater v. Mills, 19 How. 82, 15 L. Ed. 554; Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, 41 S.Ct. 1, 65 L.Ed. 97; The Cora P. White (D.C.) 243 F. 246, and The Neptune (C. C.A.) 277 F. 230. And similarly in The Saturnus, 250 F. 407, 414, 3 A.L.R. 1187, it was said by Circuit Judge Hough for the Second Circuit Court of Appeals that:
"Merchant and mariner alike subject their property to the municipal law of every country into which their venture comes, but a maritime lien is as near an approach to jus gentium as can be found in private jurisprudence, and any extension thereof not internationally well founded is to be opposed as jealously as is a denial of its accepted extent."
And this doctrine has also been recently again stated by the Supreme Court in the case of Plamals v. The Pinar Del Rio, 277 U.S. 151, at page 157, 48 S.Ct. 457, 458, 72 L.Ed. 827, where, after repeating the rule as above stated, Mr. Justice McReynolds adds:
"To subject vessels during all the time allowed by the statute of limitations to secret liens to secure undisclosed and unlimited claims for personal injuries by every seaman who may have suffered injury thereon would be a very serious burden. One desiring to purchase, for example, could only guess vaguely concerning the value."
The crucial question in this case relates to the remedy rather than the right. It is not merely whether the duty to instruct is, in the abstract, a non-delegable duty owing by the shipowner to the seaman, enforceable in some proper proceeding, but whether, assuming the existence of the duty, compensatory damages for its breach (other than maintenance and cure) constitute a maritime lien upon the ship to be enforced by the peculiar admiralty proceeding in rem, as in this case. In The City of Alexandria, (D.C.S.D.N.Y.) 17 F. 390, 392, Judge Brown said:
"This claim, however, is brought in a court of admiralty by a libel in rem against the vessel; and in such a case the question is not properly whether the analogies of the municipal law would or would not sustain such an action, but whether by the maritime law a lien exists upon the vessel for such a claim. * * * The liability of seamen to injuries of this kind is as old as navigation, and multitudes of essentially similar cases must have occurred almost every year from time immemorial. It would seem to be incredible, therefore, that the sea-laws, ancient and modern, should not have indicated the extent of the liability of the vessel or her owners for such injuries. The obligations of the vessel and her owners have, in fact, been defined in nearly the same language in both the ancient and modern authorities."
I fail to find support in the texts for the proposition now advanced; and the cases cited with regard thereto in the majority opinion do not seem to me to be authority for the position taken. The general statement in the first edition of Hughes On Admiralty, page 183, that "the relation between the crew and the ship or her owners is substantially the same as the relation between master and servant at common law, insofar as it bears upon the question of torts to the person" is clearly too broad [Crockett v. Brandt (C.C.A.2) 271 F. 415, 418], and was not repeated in that form but much qualified in statement in the second edition of that work (page 204). Cook v. Smith, (C.C.A.3) 187 F. 538 (the only appellate decision referred to) did not arise out of a libel in rem against the ship but in a limitation of liability proceeding filed in the federal district court subsequent to a suit at law for damages in a state court. It is apparent from the opinion of the Court that the particular question of the existence of the lien on the ship was not specially considered. The case of The Osceola was not mentioned at all. And the District Court cases of The P. P. Miller, 180 F. 288, 290, and McKenna v. Union S. S. Co., 215 F. 284, clearly furnish no authority for the proposition because on the facts recovery was not permitted, and such expressions as appeared in the opinion with regard to the duty to instruct would seem *951 to have been rather assumptions for purposes of the particular case than decisions as to the affirmative existence of the particular right and remedy. And the latter case was apparently not even a proceeding in rem. The case of The New York (C.C.A.2) 204 F. 764, 765 (which was a case of a libel in rem against a ship) is, as I read it, a clear authority to the contrary. The facts that were involved are quite similar to those in the instant case. It was said by the Court:
"It is the law of the sea that vessel owners are liable for wages, maintenance, and expenses of cure of a seaman injured in the service of the ship, except as a result of his own willful misconduct. There has been gradually added to this well-defined relation, either by statute or by judicial decisions, an obligation of the owners to give the seaman indemnity for injuries resulting from unseaworthiness of the vessel or her equipment. The final utterance of the Supreme Court on the relation of seamen and owners is the case of The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1902). It is inconsistent with many prior and some subsequent decisions. * * * The omission of the libelant's superiors to tell him where to stand when filling the cup, or to warn him not to straddle the shaft, if negligence, was negligence of fellow servants, for which the owners are not responsible."
This is not a suit under the Jones Act, 46 U.S.C.A. § 688, by which statute Congress has materially extended the rights of seamen as against shipowners; and it is very clear that the extent of the rights under that particular statute are not enforceable in a proceeding by a libel in rem against the ship. Plamals v. The Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827. The seaman's remedy under this statute "may have overlapped his cause of action for breach of the maritime duty of maintenance and cure, just as it may have overlapped his cause of action for injury caused through an unseaworthy ship." Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 375, 53 S.Ct. 173, 175, 77 L.Ed. 368. But the seaman is required to elect which remedy he will pursue. See Plamals v. The Pinar Del Rio, supra, 277 U.S. 151, at page 156, 48 S.Ct. 457, 458, 72 L. Ed. 827, where Mr. Justice McReynolds said in reference to the Jones Act:
"In the system from which these new rules come no lien exists to secure claims arising under them and, of course no right to proceed in rem. We cannot conclude that the mere incorporation into the maritime law of the rights which they create to pursue the employer was enough to give rise to a lien against the vessel upon which the injury occurred. The section under consideration does not undertake to impose liability on the ship itself, but by positive words indicates a contrary purpose. Sea men may invoke, at their election, the relief accorded by the old rules against the ship, or that provided by the new against the employer. But they may not have the benefit of both."
The reasons advanced in the majority opinion in support of the conclusion reached are the social desirability for more liberal treatment of seamen, and the need therefor in matter of instruction arising from the increased complexity of the modern ship's appurtenances. As to the latter, it can hardly be said to have occurred since 1902 when The Osceola was decided and certainly not since the Cortes Case in 1932. And as to the former, it is to be observed that Congress has provided the Jones Act which does not give a lien on the ship.
As Congress has provided a specific new remedy available to the libelant under the Jones Act, it is my view that the decree in this case for compensatory damages should be reversed and the recovery limited to maintenance and cure, or the libel be dismissed without prejudice to the right of the libelant to proceed under the Jones Act, which remedy it appears is still available to him. See Pacific Co. v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220; Panama R. Co. v. Johnson, 264 U.S. 375, 391, 44 S.Ct. 391, 395, 68 L.Ed. 748.